ATTORNEY FOR APPELLANT
T. Andrew Perkins
Rochester, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Wade James Hornbacher
Deputy Attorney General
Indianapolis, Indiana



FILED

May 05 2011, 1:55 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 25S03-1012-CR-669

JOSHUA KONOPASEK,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Fulton County Superior Court, No. 25D01-0807-FC-342
The Honorable Wayne E. Steele, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 25A03-1003-CR-155

**May 5, 2011**

**David, Justice.**

At a bench trial, the defendant made a relevance objection when the State elicited testimony on the length of the defendant's suspended sentence for a prior crime. We hold, under the facts of this case, that the length of the defendant's suspended sentence was both relevant and admissible. We also reaffirm the limitation on the judicial-temperance presumption, as stated in Fletcher v. State, 264 Ind. 132, 340 N.E.2d 771 (1976).

**Facts and Procedural History**

In June 2008, a group of people, including Joshua Konopasek and Mitchell Green, gathered for a party at a house in Rochester, Indiana. At some point, Green wore Konopasek's sunglasses and continued to wear them on his head throughout the night. Several hours later, Green prepared to leave while still in possession of the sunglasses. As Green walked through the door, Konopasek shoved him from behind. Green fell to the ground outside, and Konopasek stood over Green and said, "You wanna take my sh**?" He then stomped on Green's head, which broke Green's jaw and rendered Green unconscious.

The State charged Konopasek with battery causing serious bodily injury. At the bench trial, the State presented witnesses implicating Konopasek. Konopasek took the stand in his own defense and recounted the incident differently. He claimed that after he confronted Green about the sunglasses, Green pushed him first. Konopasek also contended that although he shoved Green, he was not responsible for Green's injuries. The facts of the case were highly controverted.

On direct examination, Konopasek's attorney elicited testimony from Konopasek regarding his probationary status. On cross-examination, the State further inquired into Konopasek's probation, and defense counsel objected that the inquiry was not relevant to the case. The trial court overruled the objection.

The trial court found Konopasek guilty as charged and subsequently sentenced him to eight years with six years suspended and credit for time served.

Konopasek appealed, arguing that (1) there was insufficient evidence to convict him of battery causing serious bodily injury; (2) there was insufficient evidence to disprove his self-defense claim; and (3) the trial court abused its discretion when admitting evidence elicited by the State regarding Konopasek's probation. The Court of Appeals agreed with the trial court and found sufficient evidence to support the conviction and disprove the self-defense claim. Konopasek v. State, 934 N.E.2d 762, 765 (Ind. Ct. App. 2010). The Court of Appeals then found that the trial court should not have admitted the evidence in question but concluded the error was harmless. Id. at 766. Specifically, the Court of Appeals held that Konopasek did not overcome

the judicial-temperance presumption—the presumption that in a bench trial the judge will disregard inadmissible and irrelevant evidence. Id. at 767. Konopasek sought transfer.

We granted transfer (1) to address the admissibility of the evidence in question and (2) to reaffirm Fletcher v. State, 264 Ind. 132, 340 N.E.2d 771 (1976), as it relates to the judicial-temperance presumption. We summarily affirm the decision of the Court of Appeals on the remaining issues. Ind. Appellate Rule 58(A)(2).

## I.     Admissibility of Probation Evidence

Konopasek argues that the trial court abused its discretion in admitting evidence elicited by the State regarding his probation. The Court of Appeals decided the evidence was inadmissible but ultimately found harmless error. Konopasek, 934 N.E.2d at 766. For the reasons explained below, we find that the trial court did not abuse its discretion because the evidence was relevant and admissible.

On direct examination, defense counsel elicited testimony from Konopasek about the days immediately following the incident:

Q:     Were you, in fact, on probation at the time?
A:     Yes, sir, I was.

.   .   .

Q:     And did you meet with your probation officer?
A:     Yes, sir, I did.
Q:     And did you tell him about Mitch Green pushing you at Ryan Eaton's house?
A:     Absolutely.

.   .   .

Q:     [D]id your probation officer do a drug screen on you?
A:     Yes, sir.
Q:     And did you pass it?
A:     Yes, sir.
Q:     [L]ater that afternoon, did you go over to the police station and give a statement to the police?
A:     Yes, sir.
Q:     So without the police contacting you, you went over to the police department and gave a statement in regards to this incident that we're here today for?

3

A: Yes, sir.

A: You didn't have to be summonsed or prompted or have the sheriff come talk to you; you went there?

Q: Yes, sir. My probation officer strongly suggested that I make my statement.

On cross-examination, the State further inquired into Konopasek's probation:

Q: [Y]ou testified you're on probation, right?

A: Yes, sir.

Q: Okay. And you testified that Todd Hudkins is your probation officer?

A: That's correct.

Q: Okay. And when you went to your probation meeting a day after you had continued it to the next day, he gave you a drug screen? Right?

A: That's correct.

Q: And he gave you a drug screen because you're on probation for a meth case out of Circuit Court?

A: That's correct.

Q: Okay. And you've got quite a bit of time hanging over your head?

Before the defendant answered, the following colloquy took place:

[Defense counsel]: Objection to that, Your Honor. It's not relevant to today's proceeding.

[State]: Judge, I think he's opened the door for that in the nature of the questions he's asked his client.

[Defense counsel]: I don't know that it depends—he's admitted he's on probation. I don't know that it depends on how much time he's got hanging over his head.

The Court: Yeah, I think the door has been opened to this line of questioning. I'll, I'll allow it. I'll overrule it. Go ahead.

. . .

A: I have five years left, sir.

Q: Okay. And I'm not gonna beat the issue to death, but you—there's been a petition filed based on this charge, right?

A: That's correct.

Q: I mean you're, you're pending a review of probation with those five years potentially being unsuspended as a result of this charge?

A: That's correct.

Before deciding whether the State's elicited testimony regarding Konopasek's probation is admissible, we address two threshold issues. First, we determine to what admission of evidence Konopasek directed his objection. Second, we determine what ground or grounds Konopasek advanced at trial for that objection.

"Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error."[1] Cutter v. State, 725 N.E.2d 401, 406 (Ind. 2000). Furthermore, an objection to one question does not serve as an objection to another distinct question. Craig v. Citizens Trust Co., 217 Ind. 434, 449–50, 26 N.E.2d 1006, 1012 (1940). Konopasek objected to the following question: "[Y]ou've got quite a bit of time hanging over your head?" Konopasek failed to object to any other question regarding his probation.[2] Thus this Court will review the admission of Konopasek's testimony on the length of his suspended sentence but not the admission of other testimony related to his probation.

Furthermore, a defendant may not argue one ground for an objection to the admission of evidence at trial and then raise new grounds on appeal. Gill v. State, 730 N.E.2d 709, 711 (Ind. 2000). This ensures that a trial judge is fully alerted to the legal issue being raised.[3] See Goudy v. State, 689 N.E.2d 686, 692 (Ind. 1997). At trial, Konopasek objected to the State's question on relevance grounds. On appeal, Konopasek raises additional arguments,[4] which we consolidate and rephrase as follows: Konopasek's testimony on direct did not open the door to impermissible character evidence under Indiana Evidence Rule 404(b), and the trial court abused its discretion when admitting Konopasek's testimony about the length of his suspended sentence. Because the 404(b) objection was not made part of the trial record, it is waived. Jackson v. State,

---

[1] Konopasek does not allege fundamental error. Fundamental error is an error "so prejudicial to the rights of the defendant as to make a fair trial impossible." Willey v. State, 712 N.E.2d 434, 444–45 (Ind. 1999).

[2] Konopasek concedes this issue in his reply brief: "[K]onopasek limits the issue on appeal to the error in admitting a single question from the State: 'And you've got quite a bit of time hanging over your head?'"

[3] Although both the State and trial court make references to Konopasek "opening the door" after the objection, the record reveals that the trial court was not fully alerted that Konopasek was making an Indiana Evidence Rule 404(b) objection. When a defendant volunteers information on a subject, he may open the door to otherwise inadmissible evidence on that subject. See Jackson v. State, 728 N.E.2d 147, 152 (Ind. 2000). Stating a defendant has opened the door to a line of questioning would not automatically alert the trial court that Indiana Evidence Rule 404(b) has been implicated. See generally Warren v. State, 757 N.E.2d 995, 1000 (Ind. 2001) (discussing when a witness opens the door to cross-examination on details of a prior conviction in the context of Indiana Evidence Rule 609).

[4] Konopasek alleges (1) that the admission of the evidence was "impermissible character evidence under Indiana Evidence Rule 404" and (2) that he "did not 'open the door' to evidence regarding his status as a probationer."

712 N.E.2d 986, 988 (Ind. 1999). Consequently, this Court will consider only the relevancy of the testimony in question.

Indiana Evidence Rule 401 provides a liberal standard for relevancy, and we review a trial court's ruling on relevance for an abuse of discretion. Id. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Indiana Evidence Rule 616 explicitly makes "evidence of bias, prejudice, or interest of the witness for or against any party" relevant and admissible for impeachment purposes, as this evidence can impact the weight of the witness's testimony. See Dorsey v. State, 802 N.E.2d 991, 993 (Ind. Ct. App. 2004). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Evid. R. 403.

On direct examination, Konopasek testified to his probationary status in an effort to support his credibility. By stating that he was forthright about the incident with his probation officer, Konopasek wanted to leave the impression that he was an honest individual. The State further inquired into Konopasek's probation to show a different effect Konopasek's probation could have on his credibility: because Konopasek was facing significant revocation time, he had an interest to falsify his testimony and claim self-defense. This was a classic "he said–he said" case, and evidence impeaching Konopasek was significantly relevant.[5]

We further find that the probative value of the evidence was not outweighed by unfair prejudice. See Evid. R. 403. In cases where trial testimonies are the bulk of the evidence, credibility is a key factor. As a result, impeachment evidence can be highly probative. As a probationer, Konopasek knew he faced significant jail time if convicted of this subsequent offense and thus had an interest in lying. Furthermore, this testimony is not unfairly prejudicial. Arguably, this same evidence could work in Konopasek's favor. The fact that Konopasek faced significant revocation time could support a theory that Konopasek would not have risked violating his probation by committing a subsequent crime. In short, the probative value of the testimony was not outweighed by the danger of unfair prejudice.

---

[5] We note that Indiana Evidence Rule 609 limits the types of crimes usable for impeachment. Konopasek did not make a Rule 609 objection at trial, so we do not determine whether Rule 609 impacts the admissibility of the evidence in question.

## II. Judicial-Temperance Presumption

"We generally presume that in a proceeding tried to the bench a court renders its decisions solely on the basis of relevant and probative evidence." Coleman v. State, 558 N.E.2d 1059, 1062 (Ind. 1990). This longstanding principle has been termed the judicial-temperance presumption. The judicial-temperance presumption, although broad, is not without limits.

In Fletcher v. State, 264 Ind. 132, 340 N.E.2d 771 (1976), the defendant made a specific objection to the admission of a prior conviction at a bench trial. The trial court overruled the objection. The defendant appealed, arguing that the trial court should not have admitted the evidence. Id. at 134, 340 N.E.2d at 773. The Court of Appeals did not review defendant's argument on the merits, finding the judicial-temperance presumption controlling. Id. On review, this Court set parameters on the judicial-temperance presumption in cases where a defendant makes a specific objection to the admission of evidence: "It is a curious ratiocinative process which presumes that the trial court will disregard that which it holds admissible over specific objection." Id. Accordingly, this Court did not apply the presumption, continued to analyze the defendant's argument, and ultimately determined the conviction was admissible for impeachment purposes. Id. at 137, 340 N.E.2d at 774–75.

We do not need to apply the judicial-temperance presumption to Konopasek's case because the evidence in question was relevant and admissible. However, because we believe the Court of Appeals engaged the judicial-temperance presumption too broadly, we write to reaffirm the limits on the presumption as explained in Fletcher. We also write to clarify the interplay between the presumption and harmless-error analysis.

Because the Court of Appeals found the evidence of Konopasek's probation inadmissible, it then analyzed whether the error in admitting the evidence was harmless. Konopasek, 934 N.E.2d at 766. The Court of Appeals found that Konopasek had not overcome the judicial-temperance presumption and concluded the trial court disregarded the inadmissible evidence when rendering its decision. Id. at 766–67. In reaching that conclusion, the court distinguished Konopasek's case from a prior Court of Appeals decision in which the judicial-temperance presumption had been overcome. Id. (relying on Shanks v. State, 640 N.E.2d 734 (Ind. Ct. App. 1994)). The court relied on the following language from the Shanks opinion: "[W]e hold that

7

where heretofore admissible evidence becomes inadmissible, the presumption does not apply." Id. at 767 (emphasis and internal quotation marks omitted) (quoting Shanks, 640 N.E.2d at 738). Because Konopasek's case did not involve evidence that was admissible at the time of trial but later become inadmissible due to a change in the law, the Court of Appeals "decline[d] to extend the Shanks holding beyond the unique situation before that panel." Id. We do not find the Shanks holding to be this narrow.

Shanks involved the admission of depraved-sexual-instinct evidence at a bench trial of a defendant charged with child molesting. 640 N.E.2d at 735. The State sought to introduce evidence of defendant's prior uncharged acts of molestation. Id. At the time of the bench trial, the evidence was admissible under the depraved-sexual-instinct exception—an exception to the general rule that evidence of prior bad acts is inadmissible to show action in conformity with a particular character trait. Id. at 736–37. Despite the exception, the defendant made a specific objection to the admission. The trial court overruled the objection, stating it was admitting the evidence under the exception. Id. at 737. The defendant was ultimately convicted. While the defendant's appeal was pending, this Court decided Lannan v. State, 600 N.E.2d 1334 (Ind. 1992), which abolished the depraved-sexual-instinct exception and rendered the evidence in question inadmissible. The Court of Appeals in Shanks found three reasons the judicial-temperance presumption was overcome: (1) the trial court expressly stated a prohibited purpose for admitting the evidence; (2) the type of evidence was admissible at the time of trial but was held inadmissible while defendant's appeal was pending; and (3) the trial court admitted the evidence over a specific objection. 640 N.E.2d at 737–739. The Court of Appeals then engaged in harmless-error analysis,[6] found the error prejudicial, and reversed defendant's convictions. Id. at 739.

The Shanks court enumerated three different reasons—including the one stated in Fletcher—for rejecting the judicial-temperance presumption. Although the Shanks opinion questioned

---

[6] The dissent in Shanks stated that the majority opinion suggested that the erroneous admission "automatically require[d] reversal." 640 N.E.2d at 740 (Friedlander, J., dissenting). The Shanks majority, however, seemed to engage in harmless-error analysis even though never explicitly saying so. After discussing the judicial-temperance presumption issue, the majority in Shanks found "no overwhelming evidence of guilt" which would "lessen[] the probability that the inadmissible evidence had a prejudicial impact upon the trier of fact." Id. at 739 (majority opinion). These phrases are typical of harmless error analysis. E.g., Davis v. State, 598 N.E.2d 1041, 1048 (Ind. 1992) (using phrase "overwhelming independent evidence" in harmless-error analysis); Jaske v. State, 539 N.E.2d 14, 22 (Ind. 1989) (using phrase "no substantial likelihood that the questioned evidence contributed to the conviction" in harmless-error analysis).

the viability of the Fletcher limitation, it recognized that Fletcher is still good law. Shanks, 640 N.E.2d at 739. But in Konopasek's case, once the Court of Appeals found the evidence in question inadmissible, it did not address whether Konopasek's objection at trial defeated the judicial-temperance presumption under the Fletcher limitation.

On appeal, when a defendant challenges the admissibility of evidence at a bench trial and the evidence in fact was inadmissible, the judicial-temperance presumption comes into play. One way a defendant can overcome the presumption is by showing the trial court admitted the evidence over a specific objection, as in Fletcher. If a defendant does overcome the presumption, the reviewing court then engages in full harmless-error analysis: the error is harmless if the "reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." Meadows v. State, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003). If a defendant cannot overcome the presumption, a reviewing court presumes the trial court disregarded the improper evidence and accordingly finds the error harmless. In short, an analysis of the presumption may either trigger or circumvent full harmless-error analysis. Of course, there may be situations where the error is so obviously harmless that a reviewing court need not first discuss the admissibility of the evidence and the judicial-temperance presumption. See Altman v. State, 466 N.E.2d 716, 719 (Ind. 1984) (finding the admission of evidence over a specific objection clearly harmless when the defendant was found not guilty on the relevant count).

## Conclusion

We reaffirm the Fletcher limitation on the judicial-temperance presumption. We summarily affirm the decision of the Court of Appeals finding sufficient evidence to support Konopasek's conviction and to disprove his self-defense claim. App. R. 58(A)(2). We conclude that the trial court properly admitted the evidence in question and affirm Konopasek's conviction and sentence.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ, concur.