# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lucas Thomas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2017

Court of Appeals Case No.
48A02-1608-CR-1807

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48D03-0906-FB-206

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Lucas C. Thomas (Thomas), appeals the trial court's revocation of his probation.

We affirm.

# ISSUES

Thomas raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by admitting hearsay into evidence; and

(2) Whether the trial court abused its discretion by ordering Thomas to execute the remainder of his suspended sentence.

# FACTS AND PROCEDURAL HISTORY

On June 24, 2009, the State filed an Information, charging twenty-one-year-old Thomas with three Counts of child molesting as Class B felonies, Ind. Code § 35-42-4-3(a), and one Count of child molesting as a Class C felony, I.C. § 35-42-4-3(b), based upon his multiple sexual encounters with a twelve-year-old girl in Madison County, Indiana. On October 5, 2009, Thomas entered into a plea agreement with the State, pursuant to which he agreed to plead guilty as charged. While sentencing would be left to the trial court's discretion, the State agreed to recommend concurrent sentences. On November 16, 2009, the trial court accepted the plea agreement and entered a judgment of conviction for four Counts of child molesting as Class B felonies and imposed a sentence of fifteen years—with ten years executed in the Indiana Department of Correction

(DOC) and five years suspended to probation—on each Count, all to run concurrently.[1]

[5]     In addition to the "usual and ordinary conditions of probation"—such as complying with all laws and behaving well in society—the trial court directed Thomas to, within thirty days of being placed on probation, have a sex offender evaluation and follow all recommendations for treatment; to, within seven days of being released to probation, register with local authorities as a sex offender; and to comply with any special probation conditions for sex offenders. (Appellant's App. Vol. II, p. 18).  Such special conditions for sex offenders, included, in relevant part, the following:

> 5.  You shall not miss any appointments for treatment, psychotherapy, counseling, or self-help groups (any 12 Step Group, Community Support Group, etc.) without the prior approval of your probation officer and the treatment provider involved, or a doctor's excuse.  You shall comply with the attendance policy for attending appointments as outlined by the [c]ourt.  You shall continue to take any medication prescribed by your physician.
>
> * * * *
> 9.  You shall notify your probation officer of your establishment of a dating, intimate, and/or sexual relationship.  You shall notify any person with whom you are engaged in a dating, intimate, or sexual relationship of your sex-related conviction(s).

---

[1]  There is no indication why the trial court entered a judgment of conviction for four Class B felonies instead of three Class B felonies and one Class C felony as Thomas was charged.  Although it is unclear at what point this error was corrected, the Abstract of Judgment utilized at Thomas' probation revocation hearing on July 11, 2016, reflects his proper convictions.

You shall not engage in a dating, intimate, or sexual relationship with any person who has children under the age of 18 years.

10. Your probation officer must first approve any employment and may contact your employer at any time. You will not work in certain occupations that involve being in the private residences of others, such as, but not limited to, door-to-door sales, soliciting, home service visits or delivery.

* * * *

12. You must never be alone with or have contact with any person under the age of 18. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties. You must report any incidental contact with persons under age 18 to your probation officer within 24 hours of the contact.

13. You shall not be present at specific locations where children are known to congregate including, but not limited to, parks, schools, playgrounds and day care centers.

* * * *

17. You shall complete a travel log and/or journal of daily activities as directed by your probation officer.

18. You shall not use any computer with access to any on-line computer service at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any public or private computer network. You shall not possess or use any data encryption technique or program.

(Appellant's App. Vol. II, pp. 23-24).

[6] On March 17, 2014, Thomas was released from the DOC, and his five-year probationary period began. Five months later, on August 20, 2014, Thomas' probation officer filed a Notice of Violation of Probation, alleging that Thomas had violated the terms of his probation by committing a new offense in Delaware County: failure to register as a sex or violent offender, a Class D felony. On March 30, 2015, the trial court held a hearing, during which Thomas admitted that he had failed to register as a sex or violent offender. Based on the admitted probation violation, the trial court ordered Thomas to serve one year of home detention.

[7] On January 20, 2016, Thomas' probation was transferred from Madison County to Delaware County. Six months later, Thomas' new probation officer contacted the Madison County Probation Department to report that Thomas had violated his probation. Accordingly, on June 23, 2016, a probation officer filed a Notice of Violation of Probation with the Madison Circuit Court, which alleged that Thomas committed the following violations:

> a) Failed to comply with all treatment recommendations, and provide written verification of compliance to Probation Department;
>
> * * * *
> c) Failed to keep appointments for treatment, psychotherapy, counseling, or self-help groups without the prior approval of your probation officer and the treatment provider involved, or a doctor's excuse;
>
> * * * *
> e) Failed to notify your probation officer of your establishment

of a dating, intimate, and/or sexual relationship. You shall notify any person with who[m] you are engaged in a dating, intimate, or sexual relationship of your sex-related conviction(s). You shall not engage in a dating, intimate, or sexual relationship with any person who has children under the age of 18 years.

[f]) You were alone with or had contact with a person under the age of 18. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties. You failed to report any incidental contact with persons under age 18 to your probation officer within 24 hours of the contact.

[g]) You were present at specific locations where children are known to congregate including, but not limited to, parks, schools, playgrounds and day care centers.

[h]) You used a computer with access to any on-line computer service at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any public or private computer network.

(Appellant's App. Vol. II, p. 31).[2]

[8] On July 11, 2016, the trial court held a hearing on Thomas' alleged probation violations. During the hearing, Thomas' probation officer, Teresa Brown (Officer Brown), testified that Thomas was unsuccessfully terminated from his Sexual Offender Monitoring and Management (SOMM) program at Meridian

---

[2] The petition originally included two additional alleged violations, labeled as b) and d), which claimed, respectively, that Thomas failed to register as required and possessed obscene matter. At the beginning of the evidentiary hearing, the State moved to dismiss those violations as they "were erroneously included." (Tr. p. 10).

Health Services due to non-compliance, including, in part, his failure to take all medications as prescribed for his bipolar disorder and schizophrenia. Officer Brown also stated that she had received a report from the Department of Child Services indicating that Thomas was involved in a relationship with a woman who had minor children. When questioned, Thomas admitted the relationship to Officer Brown. Officer Brown also discovered that Thomas had accompanied his girlfriend and her minor children when they went swimming at Perry Creek Reservoir, which includes a park and playground. Once again, when confronted, Thomas admitted that he had engaged in this activity with minor children and that he did not report his contact to Officer Brown or record the excursion in his activity log. Officer Brown further testified that Thomas had been accessing the Internet without authorization, and he was maintaining a profile on Facebook, using an alias, as well as a profile on the dating website Meet Me. Thomas admitted that he met several women using the online dating site. Thomas communicated with various people through Facebook, and those messages revealed that he was involved with procuring drugs for people; he was consuming alcohol; and he "got a job . . . making ten dollars an hour under the table moving n [*sic*] putting air conditions [*sic*] in" private residences. (State's Exh. 4, p. 3).

[9] Thomas also testified at the hearing and primarily argued that his alleged violations should be excused. In particular, he claimed that he was asked not to return to his SOMM program until he remedied his outbreak of psoriasis and scabies, and he explained that he stopped taking his prescription medications

because they "made [him] feel like a zombie." (Tr. p. 47). Thomas further insisted that he was in a private area at Perry Creek Reservoir and did not know that there would be children present, and he stated that he unintentionally forgot to log the activity. Furthermore, Thomas indicated that none of his contacts with children were sexually motivated, and he did not seek to lure minors on the Internet. Thomas stated that his landlord paid him some cash for helping out with installing air conditioning units on just one occasion, and Thomas denied any drug or alcohol use.

[10] At the close of the evidence, the trial court found "by preponderance of the evidence that [Thomas] violated the terms of his probation." (Appellant's App. Vol. II, p. 35). Accordingly, the trial court revoked Thomas' suspended sentence and ordered him to execute five years in the DOC.

[11] Thomas now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[12] It is well established that "[p]robation is a matter of grace, not a right to which a criminal defendant is entitled." *Robinson v. State*, 955 N.E.2d 228, 231 (Ind. Ct. App. 2011) (citing *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). Thus, the discretion to revoke probation lies solely with the trial court. *Woods v. State*, 892 N.E.2d 637, 639 (Ind. 2008). On appeal, our court reviews the revocation of a defendant's probation only for an abuse of discretion. *Id.* We will consider only the evidence most favorable to the trial court's judgment, and we do not

reweigh evidence or judge the credibility of witnesses. *Id.* "If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation." *Id.* at 639-40.

## II. *Hearsay*

[13] Thomas claims that the trial court abused its discretion by admitting certain hearsay into evidence. A probation revocation proceeding "is not to be equated with an adversarial criminal proceeding." *Watters v. State*, 22 N.E.3d 617, 619 (Ind. Ct. App. 2014) (quoting *Cox v. State*, 706 N.E.2d 547, 550 (Ind. 1999)). Rather, "probation revocation procedures 'are to be flexible, [so] strict rules of evidence do not apply.'" *Id.* (quoting *Cox*, 706 N.E.2d at 550). A trial court has broad discretion in the admission of evidence, and our court will not disturb a ruling on admissibility unless the trial court has abused its discretion. *Id.*

[14] In probation revocation proceedings, trial courts do have discretion to admit hearsay evidence; however, the admission of such evidence "must not violate the due process standards provided by the United States Supreme Court." *Id.* Thus, hearsay evidence must "bear[] some substantial indicia of reliability." *Id.* (quoting *Cox*, 706 N.E.2d at 551). A trial court does not abuse its discretion in admitting hearsay "if it 'has a substantial guarantee of trustworthiness.'" *Id.* (quoting *Reyes v. State*, 868 N.E.2d 438, 441 (Ind. 2007)). While no bright-line rule has been established for this reliability, our court has previously noted that "testimony of the parties directly involved, affidavits of parties directly involved, and certified copies would have sufficed without putting an undue

burden on the State." *Id.* at 619-20. Ideally, a trial court should explain "on the record why . . . hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses." *Reyes*, 868 N.E.2d at 442 (second and third alterations in original) (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006)).

[15] Here, Thomas challenges the admission of State's Exhibit 2, which consists of a progress report and letter explaining Thomas' termination from the SOMM Program at Meridian Health Services. During the hearing, Officer Brown testified that she received the letter and progress report from the SOMM Coordinator at Meridian Health Services, which stated that Thomas was terminated from the SOMM program because he

> was out of treatment compliance due to having unapproved relationships, having admitted contact with children to case manager, potentially using chemical substances such as spice and admitting to case manager he had gotten weed and a pipe for girlfriend, not taking prescribed psychiatric medication for months per self report, working an unapproved job.

(State's Exh. 2, p.3) (internal quotation marks omitted). The SOMM Coordinator's letter further explained that "[t]hese issues were addressed with [Thomas] multiple times through group, individual and case management services." (State's Exh. 2, p. 1).

[16] According to Thomas, the admission of State's Exhibit 2, along with Officer Brown's testimony relating thereto, "denied him his due process right to confront and cross examine all witnesses against him." (Appellant's Br. p. 6).

Thomas contends that the trial court failed to "explain on the record why the hearsay is reliable and why that reliability is substantial enough to support good cause for not producing [the authors of the letter and progress report from Meridian Health Services] to testify." (Appellant's Br. p. 8). Thomas also points out that

> [t]here was no showing by a qualified witness that the record was made at or near the time, or from information transmitted by someone with knowledge; or that the record was a regular practice of that business. Without the appropriate foundation by a witness having first-hand knowledge of the method by which the business prepares and maintains its records, or that without evidence the person preparing the record had personal knowledge of the facts or events reported, there is a total lack of trustworthiness.

(Appellant's Br. p. 8). On the other hand, the State contends that its Exhibit 2 was sufficiently reliable because Officer Brown testified that "Meridian Services sent monthly progress reports directly to her, which is standard procedure for anyone that is on probation and receiving treatment at Meridian Services." (State's Br. p. 12). The State further argues that the hearsay was reliable because it was "corroborated by [Thomas'] admissions." (State's Br. p. 12). We agree with the State.

[17] We acknowledge Thomas' assertion that the trial court failed to provide an adequate explanation as to its decision to admit the hearsay. *See Reyes*, 868 N.E.2d at 442. Nevertheless, notwithstanding the fact that State's Exhibit 2 did not contain affidavits of the authors or a certification as a business record, we

find substantial indicia of reliability because the information contained in State's Exhibit 2 was entirely corroborated by other evidence at the revocation hearing. Specifically, Officer Brown testified that Thomas admitted to her that he was involved in a relationship with a woman with minor children and that he had accompanied his girlfriend and her young children when they went swimming at Perry Creek Reservoir. Furthermore, excerpts from Thomas' Facebook account—which he identified as his during the hearing—establish that Thomas was involved in procuring illegal drugs for other people, as well as having obtained "under the table" employment installing air conditioners in private residences. (State's Exh. 4, p. 3). Finally, Thomas testified during the revocation hearing that he had stopped taking the medications prescribed for his schizophrenia, bipolar disorder, and depression. Accordingly, we find no abuse of discretion in the admission of State's Exhibit 2 because the hearsay therein is substantially trustworthy.

### III. *Sanction*

[18] Next, Thomas challenges the trial court's decision to revoke his probation and impose the entirety of his five-year suspended sentence. "We review a trial court's sentencing decision in probation revocation proceedings for an abuse of discretion." *Cox v. State*, 850 N.E.2d 485, 489 (Ind. Ct. App. 2006). It is an abuse of discretion if the trial court's decision "is clearly against the logic and effect of the facts and circumstances." *Figures v. State*, 920 N.E.2d 267, 273 (Ind. Ct. App. 2010). Upon a finding that a defendant has violated a condition of probation,

the court may impose one (1) or more of the following sanctions:
(1) Continue the person on probation, with or without modifying or enlarging the conditions.
(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

I.C. § 35-38-2-3(h). Accordingly, it was well within the trial court's authority to order Thomas to execute his suspended sentence.

[19] Nevertheless, Thomas insists that he "demonstrated that Community Corrections was a strong alternative to incarceration." (Appellant's Br. pp. 9-10). We find no merit in this argument. Rather, the evidence reveals that Thomas was convicted of three Counts of Class B felony child molesting and one Count of Class C felony child molesting. Within five months of being released from the DOC and beginning probation, Thomas violated his probation by failing to register as a sex offender. After Thomas admitted to this violation, the trial court sanctioned him with one year of home detention. Despite the trial court's show of leniency for his first probation violation, in June of 2016, Thomas was again accused of violating his probation. This time, the evidence established that Thomas violated no less than *eight* of his probation conditions: (1) he failed to complete sex offender treatment; (2) he failed to take his medication as prescribed; (3) he failed to notify his probation officer of his new relationship, and he commenced a relationship with a women having minor children; (4) he did not receive authorization for his employment, and he accepted employment that placed him in the private residences of others; (5) he

had contact with minors; (6) he visited a park/swimming area where children would be expected to gather, and he did not include this on his daily log; (7) he accessed the Internet; and (8) he failed to maintain good behavior/adherence to the laws by drinking alcohol and involving himself in drug transactions.

[20] We find that Thomas' blatant and repeated disregard of the conditions of his probation demonstrates an utter disrespect for the court's authority. He has established that he is not deserving of the grace and liberty of a probationary sentence because he refuses to conform his conduct to the rules that allow him to serve his sentence in society. Therefore, we find no abuse of discretion in the trial court's order requiring Thomas to execute his five-year suspended sentence in the DOC.

## CONCLUSION

[21] Based on the foregoing, we conclude that the trial court neither abused its discretion by admitting hearsay into evidence nor by imposing the entirety of Thomas' suspended sentence following a determination that he had violated his probation.

[22] Affirmed.

[23] Crone, J. and Altice, J. concur