

**FILED**

Dec 11 2019, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Austin & Jones, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Terpstra,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 11, 2019

Court of Appeals Case No.
19A-CR-671

Appeal from the Howard Superior
Court

The Honorable William C.
Menges, Jr., Judge

Trial Court Cause No.
34D01-1304-FB-284

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, William Terpstra (Terpstra), appeals the trial court's Orders revoking his probation and sanctioning him.

We affirm.

# ISSUES

Terpstra presents four main issues for review, which we restate and reorder as the following:

> (1) Whether sufficient evidence supported the revocation of his probation for committing the new offense of child molesting;
>
> (2) Whether Terpstra was denied due process by the trial court's probation revocation judgment statement;
>
> (3) Whether the trial court abused its discretion in manner and substance of its evidentiary rulings; and
>
> (4) Whether the trial court abused its discretion when it ordered Terpstra to execute the entirety of his previously-suspended sentence.

# FACTS AND PROCEDURAL HISTORY

Terpstra was a physician licensed in Indiana who practiced at the Wagoner Medical Centers (WMC) branch in Kokomo, Indiana, along with other physicians and physicians' assistants. Terpstra joined the WMC practice in 2010. The physicians and physicians' assistants at the WMC, including

Terpstra, prescribed medications outside the scope of usual professional practice and for non-medical purposes. Twenty-seven deaths were linked to these prescribing practices, including the deaths of eight patients under Terpstra's care.

[5] On April 17, 2013, the State filed an Information, charging Terpstra with twenty-four felonies, including eight Counts of Class B felony dealing in cocaine or a narcotic drug; seven Counts of Class C felony dealing by delivery of a Schedule IV controlled substance; seven Counts of dealing by delivery of a Schedule I, II, or III controlled substance; one Count of Class B felony conspiracy to deal in cocaine or a narcotic drug; and one Count of conspiracy to deal by delivery in a Schedule IV controlled substance. On September 25, 2015, Terpstra pleaded guilty pursuant to a plea bargain with the State to two Counts of Class B felony dealing in a narcotic drug for knowingly delivering methadone outside the course of professional practice and for non-medical purposes to two separate victims. On September 16, 2015, the trial court sentenced Terpstra according to the terms of his plea agreement and imposed concurrent sentences of 5,475 days for each Class B felony conviction, 548 days of which were to be served on home detention, with the remainder suspended to probation. Two of the conditions of Terpstra's probation were that he not commit any new criminal offenses and that he contact his probation officer within forty-eight hours of being arrested for, or charged with, a new criminal offense.

[6] Terpstra had married Vicki Terpstra (Vicki) on October 15, 2011. Vicki had a granddaughter, E.Z., who was thirteen years old during the summer of 2017. E.Z., her brothers, and E.Z.'s parents would regularly spend time with Vicki and Terpstra, sometimes at their home in Sheridan, Indiana. During the early summer of 2017, E.Z. spent time at Vicki and Terpstra's home by herself, as the rest of her family was elsewhere. One day during this visit, E.Z. and Terpstra sat on the couch in the living room watching a football game on the television. Terpstra sat close to E.Z. on her right side. While they were sitting together on the couch and Vicki was out of the room, Terpstra used his left hand to touch E.Z. on her buttocks under her clothes as he used his right hand to touch her chest under her bra. Terpstra remained facing the television as he touched E.Z. in this manner for approximately fifteen minutes.

[7] In the fall of 2017, E.Z. was depressed and anxious. E.Z. underwent counseling and, on January 4, 2018, disclosed that Terpstra had fondled her. E.Z. was forensically interviewed on January 5, 2018, during which she reported that Terpstra had touched her chest, buttocks, and vagina under her clothes. On March 28, 2018, the State filed an Information, charging Terpstra with one Count of child molesting, a Level 4 felony, Ind. Code § 35-42-4-3(b), for fondling E.Z. on a date between June 1, 2017, and November 30, 2017. On April 13, 2018, the State filed a petition to revoke Terpstra's suspended sentence in his drug dealing case, alleging that Terpstra had violated his probation by committing the new criminal offense of child molesting and by failing to

contact his probation officer within forty-eight hours of his arrest for that offense.

[8] On February 1, 2019, while meeting with the prosecutor to prepare for trial on the new child molesting charge, E.Z. told the prosecutor for the first time that Terpstra had not actually touched her vagina as she had originally reported. E.Z. confirmed to the prosecutor that Terpstra had touched her buttocks and chest. In light of this change in E.Z.'s potential testimony, the prosecutor became uncertain that she could obtain a conviction after a jury trial, and the prosecutor was concerned about what the effect of a trial and rigorous cross-examination upon E.Z. would be in light of that uncertainty. On February 4, 2019, the prosecutor moved to dismiss the child molesting charge against Terpstra, and that motion was subsequently granted.

[9] On February 19, 2019, the trial court held a hearing on the State's petition to revoke Terpstra's probation in his drug dealing case. On a number of occasions during the hearing, in response to an objection, the trial court explained that, in an effort to complete the hearing in a timely manner, it would overrule the interposed objection and would ignore any inadmissible evidence in reaching its judgment. This was the trial court's response to Terpstra's hearsay objections to testimony by the investigating detective that he had contacted E.Z.'s school and asked if she had a history of being dishonest and to Terpstra's relevancy objection to E.Z.'s testimony that Terpstra had touched her under her swimsuit when she was ten years old, a time period not included in the child molesting Information and a time when he was not on probation for the drug offenses.

[10]  E.Z. testified at the probation revocation hearing regarding the offenses and was subjected to cross-examination on her version of events, including the fact that she had originally inaccurately reported that Terpstra had touched her vagina. E.Z. explained that, when she originally reported the child molesting offense, she had not had adequate time to think about the events, did not know how to answer some of the questions posed to her, and thought she needed a response for everything that was asked of her. Terpstra also testified and denied that he had fondled E.Z. Terpstra's probation officer testified that Terpstra never personally contacted him to inform him that he had been arrested on the child molesting charge, but the probation officer confirmed that Terpstra's counsel had contacted him before the arrest to inform him that Terpstra might be arrested for child molesting.

[11]  At the conclusion of the probation revocation hearing, the trial court found that the State had proved by a preponderance of the evidence that Terpstra committed the new offense of child molesting. In pronouncing judgment, the trial court stated as follows:

> The testimony between [Terpstra] and [E.Z.] is totally contradictory and so I think what I have to do is consider not only the testimony that was given but the manner of delivering that testimony, the demeanor of the witnesses, the believability of the witnesses, what reason that any of the witnesses would have to lie. And taking that all into consideration I find that [E.Z] is a completely credible witness and that [] Terpstra is a completely incredible witness.

(Transcript p. 100). The trial court did not render judgment on the State's allegation that Terpstra had violated his probation by failing to contact his probation officer within forty-eight hours of his arrest for child molesting. In its written judgment, the trial court found that Terpstra had "violated the terms and conditions of his Probation" and entered judgment of conviction. (Appellant's App. Vol. II, p. 22).

[12] On March 13, 2019, the trial court held a sanction hearing. At the conclusion of the hearing, the trial court noted the severity of the drug offenses Terpstra had pleaded guilty to and had been sentenced for, in that his actions had contributed to the excessive amounts of drugs in the community. The trial court found that Terpstra had had no concern for other people and that he had been subject only to his own wants and desires. The trial court found that

> [h]e received a sentence that was very lenient in terms of what his behavior was, from betraying the trust of his patients, betraying the trust of the community, betraying the trust of the medical profession. He's on probation, and he has exhibited that his own interests and desires are still more important to him than what harm he causes other people and that he continues to prey upon the weak and helpless in order to advance his own desires.

(Tr. pp. 124-25). The trial court found that any alternate placement outside the Indiana Department of Correction (DOC) would only give Terpstra the opportunity to victimize the weak and helpless members of society. The trial court ordered Terpstra to execute all of his previously-suspended sentence with the DOC.

Terpstra now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

Terpstra claims that the State did not produce sufficient evidence to prove that he committed the new offense of child molesting. Probation is a matter of grace left to a trial court's discretion, not a right to which a criminal defendant is entitled. *Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind. 2014). A probation violation hearing is a civil proceeding, and the State must prove the alleged probation violation by a preponderance of the evidence. *Id*. Our standard of review of the sufficiency of the evidence supporting the revocation of probation is similar to our standard of review for other matters: "[W]e consider only the evidence most favorable to the judgment—without regard to weight or credibility—and will affirm if 'there is substantial evidence of probative value to support the trial court's conclusion that a probationer has violated any condition of probation.'" *Id*. (quoting *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995)).

Here, the State alleged that Terpstra committed the new offense of child molesting by fondling or touching E.Z., who was under the age of fourteen at the time, with the intent to arouse or satisfy his or E.Z.'s sexual desires. E.Z. testified at trial that, on a day during the early summer of 2017 while they were both sitting on a couch in the living room of Terpstra and Vicki's home, Terpstra used his left hand to "grope" her buttocks under her clothes while

simultaneously using his right hand to touch her chest under her shirt. (Tr. p. 31). E.Z. was thirteen years old at the time. This is the evidence most favorable to the trial court's judgment, and it is sufficient evidence to support a criminal conviction for child molesting by fondling, let alone a probation revocation allegation to be proved by a preponderance of the evidence. *See Altes v. State*, 822 N.E.2d 1116, 1121-22 (Ind. Ct. App. 2005) (holding that evidence of rubbing of child's buttocks under clothes and of rubbing a child's upper body from shoulder to waist under clothes was sufficient to sustain fondling convictions), *trans. denied*.

[16] Terpstra's first challenge to the sufficiency of the evidence is that the State did not prove that the offense was committed in 2017 when E.Z. was thirteen and he was on probation in the drug dealing case. However, Vicki testified that, during the summer of 2017, E.Z. spent the night alone at the home Vicki and Terpstra shared in Sheridan. This is the evidence that supports the trial court's judgment, and it is the only evidence that we consider in conducting our review. *See Murdock*, 10 N.E.3d at 1267. Terpstra's efforts on appeal to direct our attention to other evidence in the record which he contends shows that E.Z. did not spend the night alone in his home during the relevant time period is unavailing in light of our standard of review. *See id*.

[17] Terpstra also contends that E.Z.'s testimony was unbelievable because she recanted her original report that he had also touched her vagina, the mode of his fondling, as reported by E.Z., was "physically impossible," and Vicki testified that she observed the two sitting on the couch together but did not

observe the fondling. (Appellant's Br. p. 35). We observe that the trial court heard all of the evidence and concluded that E.Z. was a credible witness, that the offense occurred as E.Z. reported it, and that the offense occurred even though Vicki did not directly observe it. We will not second-guess these determinations on the part of the trial court; to do so would require us to reweigh the evidence and reassess the credibility of witnesses in contravention to our standard of review. *See id*. Because the State produced sufficient evidence to prove by a preponderance of the evidence that Terpstra committed the new offense of child molesting, we affirm the revocation of his probation.[1]

## II. *Due Process*

Terpstra claims that the trial court violated his right to due process by admitting certain evidence, failing to make certain evidentiary rulings, and failing to specify the evidence upon which it relied in rendering its judgment. However, "[d]ue process rights are subject to waiver, and claims are generally waived if raised for the first time on appeal." *Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010), *trans. denied*. Our review of the record revealed that Terpstra never raised a due process objection at trial, and Terpstra does not argue that the alleged violations of his due process rights constituted fundamental error. As a

---

[1] Given our disposition of this issue, we do not address Terpstra's argument that the evidence was insufficient to show that he also violated his probation by failing to contact his probation officer following his arrest on the child molesting charge. *See Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015) (holding that one violation of a condition of probation is enough to support a probation revocation). However, we note that it appears that the trial court did not enter judgment on that alleged violation, so there is nothing for us to review regarding that allegation.

result, we conclude that, apart from his claim pertaining to the trial court's judgment statement, Terpstra waived his due process claims.

[19] The United States Supreme Court has held that, because the revocation of probation results in a loss of liberty, a probationer must be afforded certain due process rights before his probation is revoked. *Dalton v. State*, 560 N.E.2d 558, 559-60 (Ind. Ct. App. 1990) (relying on *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.E.2d 656 (1973)). As part of that due process, the probationer is entitled to a written statement by the fact-finder as to the evidence relied upon and the reasons for the revocation. *Id*. at 560. The requirement of a written statement providing the reasons for the revocation is "a procedural device aimed at promoting accurate fact finding and ensuring the accurate review of revocation decisions." *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011). While it is not the preferred manner of fulfilling the written statement requirement, the right to a written statement is satisfied if the transcript of the evidentiary hearing present in the record contains a clear statement of the trial court's reasons for the revocation. *Id*.

[20] Here, the trial court's written statement upon revocation merely provided that it found that Terpstra had "violated the terms and conditions of his [p]robation[.]" (Appellant's App. Vol. II, p. 22). We agree with Terpstra that this written statement alone did not comport with his due process right to be informed of the reasons for the revocation. *See Medicus v. State*, 664 N.E.2d 1163, 1165 (Ind. 1996) (holding that trial court's simple statement upon revocation that Medicus had violated the terms of probation did not comply

with his due process right). However, the transcript of Terpstra's revocation hearing has been made part of the record on appeal, and we disagree with Terpstra's argument that "the transcript does not contain a clear statement of the evidence relied upon[.]" (Appellant's Br. p. 29). In its oral judgment statement at the revocation hearing, the trial court specified that it concluded that Terpstra had committed the new offense of child molesting based upon its belief in E.Z.'s testimony and its disbelief of Terpstra after observing "the manner of delivery [of] that testimony, the demeanor of the witnesses, the believability of the witnesses, what reason that any of the witnesses would have to lie." (Tr. p. 100). Contrary to Terpstra's assertions on appeal, the trial court clearly identified what evidence it relied upon—the testimony of E.Z. and Terpstra. Because the trial court outlined its reasons for revoking Terpstra's probation and the evidence it relied upon, Terpstra's due process rights were not violated. *See Washington v. State*, 758 N.E.2d 1014, 1018 (Ind. Ct. App. 2001) (finding no due process violation even where the trial court failed to enter a written sentencing statement at all but where the transcript of his revocation hearing in the record revealed the basis for the revocation).

[21] Terpstra also claims that the trial court's revocation statement violated his due process rights because the trial court "found the date of the alleged molestation to be completely irrelevant." (Appellant's Br. p. 30). Terpstra contends this finding violated his due process rights because he could only be found to have violated his probation by committing a new offense while he was on probation. We find that the factual underpinning of Terpstra's argument is inaccurate

because, while the trial court noted in its revocation statement that "the date that this occurred is really totally irrelevant," it immediately also stated, "[o]ther than it has to be after September 16, 2015[,] when he was sentenced and prior to April 12, 2018, when the Petition to Revoke was filed." (Tr. p. 100). Therefore, the trial court was aware that the new offense was required to have been committed during the probation period, and its revocation statement adequately outlined that awareness. Finding no violation to Terpstra's right to due process, we affirm the revocation of his probation.

### III. *Evidence*

[22] Terpstra argues that the trial court erred in the manner and substance of its evidentiary rulings. As a general matter, the Indiana Rules of Evidence do not apply to probation revocation proceedings. Ind. Evidence Rule 101(d)(2); *see also Cox v. State*, 706 N.E.2d 547, 550-51 (Ind. 1999). This flexibility is "necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders." *Cox*, 706 N.E.2d at 550. A trial court has broad discretion in ruling on the admissibility of the evidence at a probation revocation hearing, and we will not disturb its decision absent an abuse of discretion. *Watters v. State*, 22 N.E.3d 617, 619 (Ind. Ct. App. 2014).

### A. *Reception of the Evidence*

[23] At the revocation hearing, in response to numerous evidentiary objections by both Terpstra and the State, the trial court ruled that, in the interest of finishing the hearing in a timely manner, it would hear the challenged evidence and disregard any inadmissible evidence in reaching its judgment. Terpstra claims

that, "[r]elying upon the judicial temperance presumption, the trial court repeatedly admitted hearsay and/or irrelevant evidence that it acknowledged might be inadmissible hearsay and/or irrelevant." (Appellant's Br. pp. 23-24). Terpstra contends that the trial court impermissibly relied upon the judicial temperance presumption because the presumption is an appellate concept that may not be applied at the trial court level.

[24] The judicial temperance presumption, succinctly stated, is the presumption "that in a proceeding tried to the bench a court renders its decisions solely on the basis of relevant and probative evidence." *Konopasek v. State*, 946 N.E.2d 23, 28 (Ind. 2011). The presumption exists because "[t]he risk of prejudice is quelled when the evidence is solely before the trial court." *Conley v. State*, 972 N.E.2d 864, 873 (Ind. 2012). The presumption comes into play when a defendant challenges the admissibility of evidence at a bench trial and the evidence was, in fact, inadmissible. *Konopasek,* 946 N.E.2d at 29. A defendant may overcome the presumption by showing that the trial court admitted the evidence over a specific objection. *Id.* If a defendant overcomes the presumption, the reviewing court engages in a harmless-error analysis and may affirm the trial court if it is satisfied the judgment it supported by substantial independent evidence such that there is no substantial likelihood that the challenged evidence contributed to the judgment. *Id.* If the presumption is not overcome, we presume that the trial court disregarded the challenged evidence and find any error to be harmless. *Id.*

[25]     Here, there is no indication in the record that the trial court explicitly or implicitly relied on the judicial temperance presumption. Rather, the trial court chose to receive the proposed evidence of the case and essentially take the interposed objections under advisement, explaining that it would not consider any inadmissible evidence in reaching its judgment. In his Reply Brief, Terpstra contends that the trial court's statement that it was overruling his objections for the time being meant that the trial court admitted all of the challenged evidence. However, the trial court's explanation after each objection that it would not consider inadmissible evidence was a clear indication that it was reserving its evidentiary rulings, not admitting the challenged evidence.

[26]     Terpstra seemingly argues on appeal that the trial court had a duty to rule immediately on the admissibility of the challenged evidence, citing *Stephenson v. State*, 205 Ind. 141, 163, 179 N.E. 633, 661 (Ind. 1932), a case which we find to be unpersuasive because it involved a jury trial, not the more flexible probation revocation and bench trial at issue here, and it did not hold that a trial court may not take evidentiary rulings under advisement. Terpstra presents us with no authority for his apparent proposition that a trial court conducting a probation revocation hearing may not take evidentiary rulings under advisement. While it is true that Indiana Evidence Rule 104(a) provides that a trial court "must decide any preliminary question about whether . . . evidence is admissible," the Rules of Evidence do not apply to probation revocation proceedings. Although we do not encourage trial courts to conduct probation revocation proceedings in this manner, we conclude that to hold that a trial

court under these circumstances must always immediately rule on evidentiary objections would be to unnecessarily limit the discretion of the trial court and to ignore the increased flexibility of probation revocation proceedings.

### B. *Specific Evidence*

[27] Terpstra more specifically contends that the trial court erred when it admitted the investigating detective's testimony that he contacted E.Z.'s school to inquire about any history of dishonesty and the detective's testimony that E.Z. reported during her forensic interview that Terpstra had touched her breast area and inside her pants below the waistband on "numerous occasions." (Tr. pp. 14-15). Terpstra also contends that the trial court committed reversible error when it admitted E.Z.'s testimony that Terpstra touched her under her swimsuit on an occasion prior to his probation period, E.Z.'s mother's testimony that E.Z.'s aunt once said a hug by Terpstra made the aunt uncomfortable, and E.Z.'s mother's testimony that, after she observed E.Z. sitting on Terpstra's lap, she decided to watch them closely. Terpstra contends that this evidence was largely hearsay and was irrelevant to proving that Terpstra committed the new offense of child molesting as alleged in the petition to revoke his probation.

[28] In addressing these specific evidentiary issues, we reiterate that, contrary to Terpstra's assertions, the trial court did not admit the challenged evidence at the hearing. Rather, the trial court took its evidentiary rulings under advisement and stated that it would not rely on any inadmissible evidence in reaching its revocation decision. Assuming, without deciding, that all of this challenged evidence was inadmissible, we must conclude that any error committed by the

trial court was harmless in light of the aforementioned judicial temperance presumption, under which we presume that the trial court only relied upon admissible and relevant evidence. *Konopasek*, 946 N.E.2d at 28. Terpstra has not overcome this presumption because he has not shown that the evidence was admitted by the trial court over his objection. *Id.* at 29.

[29] We also note that the trial court stated in its oral statement at the revocation hearing that its judgment rested on its belief in E.Z. and its disbelief in Terpstra after observing them in court and considering what motive they might have to lie. The uncorroborated testimony of the victim of child molesting is sufficient to prove the offense beyond a reasonable doubt. *Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015), *trans. denied*. Thus, E.Z.'s testimony alone was sufficient to prove by a preponderance of the evidence that Terpstra committed the new offense of child molesting. There is nothing in the trial court's revocation judgment statement indicating that it relied upon any of the challenged evidence in revoking Terpstra's probation. Therefore, we conclude that, even if Terpstra had succeeded in overcoming the judicial temperance presumption, there is substantial independent evidence sufficient to sustain Terpstra's probation revocation. *Konopasek*, 946 N.E.2d at 29.

## IV. *Sanction*

[30] Terpstra also challenges the trial court's order that as a sanction for violating his probation, he must serve the entirety of his 4,927-day, previously-suspended sentence. Following the revocation of probation, the trial court may continue the probation with or without modification, extend the probation for a period of

not more than one year, or order all or part of the previously-suspended sentence to be executed. I.C. § 35-38-2-3(h). This court reviews a trial court's sentencing decision following a probation revocation for an abuse of discretion. *Butler v. State*, 951 N.E.2d 255, 262 (Ind. Ct. App. 2011). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

[31] Before pronouncing its probation revocation sanction, the trial court observed that Terpstra's drug convictions stemmed from his activities at the WMC which contributed to an excessive amount of drugs flooding the community, Terpstra had no concern for the people affected by those actions, and that Terpstra's drug offenses were motivated solely by his own wants and desires. The trial court, which had also sentenced Terpstra in the drug dealing case, further noted that Terpstra had received a lenient sentence given the nature of his drug dealing offenses, and that in spite of that leniency, he committed the new offense of child molesting, thus demonstrating that the leniency he had been shown had failed to change his behavior. The trial court found that any alternative placement outside the DOC would only provide Terpstra with additional opportunity to victimize the weak and helpless members of society. Given these circumstances, we find that the trial court acted within its wide discretion in ordering Terpstra to serve all of his previously-suspended sentence.

[32] Terpstra first argues that the trial court's sanction was an abuse of its discretion because the 4,927-day sentence imposed by the trial court is "far beyond what a first[-]time offender accused of child molest would typically receive."

(Appellant's Br. p. 41). However, the trial court did not sentence Terpstra for child molesting; rather, it sanctioned him for violating his probation in his drug dealing case. We also reject Terpstra's argument that the fact that the instant case was the first probation violation to be filed against him or his age rendered the trial court's sanction an abuse of discretion. Terpstra was on probation for only approximately one year before committing the new offense of Level 4 felony child molesting, which was not a mere technical violation of the terms of his probation. *See Knecht v. State*, 85 N.E.3d 829, 840 (Ind. Ct. App. 2017) (upholding trial court's imposition of entire previously-suspended sentence following Knecht's commission of new offense of child molesting in light of the short period of time before the violation and the nature of violation). Lastly, contrary to Terpstra's argument on appeal, the trial court's statements upon sanctioning him for the probation violation reveal that it did not order him to serve the entirety of his previously-suspended sentence because it thought the drug dealing case sentence was too lenient; instead, it sanctioned him because he did not change his behavior despite being accorded that leniency. We cannot say that the trial court abused its discretion in sanctioning Terpstra for committing the new offense of child molesting, and we affirm the trial court's sanction Order.

## CONCLUSION

[33] Based on the foregoing, we conclude that the State proved the new offense of child molesting by fondling by a preponderance of the evidence. We also conclude that the trial court's judgment statement complied with Terpstra's

right to due process, the trial court did not abuse its discretion in the manner in which it received the evidence at the revocation hearing, and any error in the admission of the evidence was presumed to be harmless. Lastly, we conclude that the trial court did not abuse its discretion when it ordered Terpstra to execute all of his previously-suspended sentence.

[34] Affirmed.

[35] Bradford, J. concurs

[36] Vaidik, C. J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

William Terpstra,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

Court of Appeals Case No.
19A-CR-671

**Vaidik, Chief Judge, dissents.**

[37] I respectfully dissent. A judge is required to rule on objections—full stop. Parties are entitled to know the basis of a judge's decision. What a judge relied on in making his ruling is fundamental to the due-process rights of the parties and essential for meaningful appellate review. As the majority acknowledges, and as the United States Supreme Court, the Indiana Supreme Court, and this Court have said numerous times, a probationer is entitled to a written statement

by the fact finder as to the evidence relied upon and the reasons for the revocation. *See, e.g., Dalton*, 560 N.E.2d at 560.[2]

[38] We have in the past excused the requirement of a written statement by allowing an oral statement by the court to serve in lieu thereof. But to my knowledge this Court has never relieved trial courts of ruling on objections or, if they fail to do so, at least delineating the evidence they relied on in making their decisions. Here, the trial court didn't rule on most of the objections or identify all the evidence it credited, so it is impossible to determine everything it relied on in deciding the case. The trial court did say in its oral ruling that it considered the manner of the delivery of the testimony, the demeanor of the witnesses, and "the believability of the witnesses." Tr. p. 100. However, this explanation does not indicate whether the trial court considered inadmissible evidence. As such, Terpstra's fundamental due-process rights were violated, and we cannot meaningfully review the trial court's decision.

[39] The judicial-temperance presumption does not save the trial court's actions. First, Terpstra made specific objections to a variety of evidence. The presumption applies when evidence is presented and there is no specific objection. In those situations, an appellate court gives a trial court the benefit of the doubt and presumes that it disregarded any inadmissible matter. If there

---

[2] I disagree with the majority that Terpstra waived his due-process argument by failing to raise it during the revocation hearing. Until the trial court issued its written order, Terpstra didn't know definitively that his due-process rights had been violated. *See In re S.B.*, 5 N.E.3d 1152, 1154 (Ind. 2014)

is an objection, then no presumption is necessary because the appellate court knows by the ruling whether the trial court considered or did not consider the objected-to evidence. Second, the presumption is one we apply as an appellate court, not one that the trial court invokes to avoid making evidentiary rulings.

[40] The majority states: "Although we do not encourage trial courts to conduct probation revocation proceedings in this manner, we conclude that to hold that a trial court under these circumstances must always immediately rule on evidentiary objections would be to unnecessarily limit the discretion of the trial court and to ignore the increased flexibility of probation revocation proceedings." Slip op. ¶ 26. I fear this will be read to excuse trial-court judges in bench trials from making explicit evidentiary rulings. And I do not mean to suggest that a trial court cannot take an evidentiary issue under advisement and must "immediately" rule on it, only that it must, at some point, announce its ruling on the issue or, in the alternative, specifically identify the evidence it relied upon in reaching its decision.

[41] I suppose this Court could go through each of the objections in this case, resolve whether the evidence was admissible or not, and then determine whether there was harmless error. To do so would be to ignore the duty of the trial court to rule on objections and to tell the parties and the reviewing court the evidence it relied upon.

[42] I would reverse and remand this case back to the trial court for specific rulings on Terpstra's evidentiary objections or a more detailed explanation of which evidence the court did (or did not) rely on in making its decision.